# Construction of § 406 of the Federal Employees Pay Comparability Act of 1990

Section 406 of the Federal Employees Pay Comparability Act of 1990 does not extend the authority to make bonus payments to employees at the New York Field Division of the Federal Bureau of Investigation pursuant to section 601 of the Intelligence Authorization Act for fiscal years 1989 and 1990 beyond the expiration date of the demonstration project established by section 601.

August 23, 1993

MEMORANDUM OPINION FOR THE
ASSISTANT DIRECTOR, LEGAL COUNSEL
FEDERAL BUREAU OF INVESTIGATION

This memorandum responds to your request for our opinion whether § 406 of the Federal Employees Pay Comparability Act of 1990 ("FEPCA"), 104 Stat. 1427, 1467,[1] preserves extraordinary benefits payable under § 601 of the Intelligence Authorization Act, Fiscal Year 1989, Pub. L. No. 100-453, 102 Stat. 1904, 1911 (1988), as amended by the Intelligence Authorization Act, Fiscal Year 1990, Pub. L. No. 101-193, § 601, 103 Stat. 1701, 1710 (1989), even after expiration of § 601's payment authority. We conclude that § 406 does not preserve the § 601 benefits beyond the expiration of the latter provision.

Section 601 establishes a demonstration project that attempts to improve recruitment and retention at the New York Field Division ("NYFD") of the Federal Bureau of Investigation ("FBI") by increasing pay. *See* H.R. Rep. No. 100-591(I), at 11-12 (1988), *reprinted in* 1988 U.S.C.C.A.N. 2469, 2479-80. Pursuant to § 601, any FBI employee transferred to the NYFD receives a lump sum payment of up to $20,000, conditioned upon the employee's agreement to serve at least three years in that office. § 601(a)(1). In addition, all employees in the NYFD receive periodic bonus payments of between 20 and 25% of their basic pay for the period covered by the bonus. § 601(a)(2). Section 601(b) provides that these benefits will terminate after five years. We understand from you that the program will end on September 30, 1993.

FEPCA institutes a system of pay adjustments for general schedule employees throughout the Federal government, including locality pay to accommodate the higher cost of living in certain areas. Under FEPCA, special agents in the NYFD currently receive a 16% increase over base pay to account for New York's higher cost of living. Similarly, support staff who receive pay under the general schedule

---

[1] FEPCA was enacted as § 529 of the Treasury, Postal Service and General Government Appropriations Act, 1991, Pub L. No. 101-509, 104 Stat. 1389 (1990). All references to provisions of FEPCA in this memorandum will cite the internal section numbers and corresponding pages in the statutes at large.

receive an 8% increase. Support staff who receive pay under the federal wage system do not receive any increase. *See* FEPCA §§ 101, 404, 104 Stat. at 1429-30, 1466; Exec. Order No. 12786, Schedule 9, *reprinted in* 5 U.S.C. § 5332 note (Supp. III 1991).

Thus, § 601 and FEPCA each provide extra pay for NYFD employees (except for wage employees who receive benefits under § 601 but not FEPCA). FEPCA's § 406, however, instructs the Office of Personnel Management ("OPM") to coordinate the two programs to ensure that their payments are not cumulated:

> Notwithstanding [§ 601], as amended, the Office of Personnel Management shall reduce the rate of periodic payments under such section as the provisions of this Act [FEPCA] are implemented: *Provided*, That no such reduction results in a reduction of the total pay for any employee of the New York Field Division of the Federal Bureau of Investigation. Notwithstanding [§ 601], the Office of Personnel Management may make such periodic payments inapplicable to employees newly appointed to, or transferred to, the New York Field Division on or after January 1, 1992.

The main clause in the first sentence of § 406 clearly does not authorize a continuation of § 601 pay beyond the life of the demonstration project. On the contrary, it expressly directs OPM to *reduce* § 601 payments to NYFD employees as FEPCA is implemented. The second sentence of § 406 also contemplates the curtailing of § 601; it instructs that employees hired after January 1, 1992, need not receive any § 601 benefits.

Notwithstanding this general thrust of § 406, it has been suggested that the proviso in the first sentence might be intended as independent authority to "grandfather" current NYFD employees with continued extra pay at the § 601 level. The suggestion is that the proviso forbids any reduction in the total pay of NYFD employees as a result of a reduction in § 601 benefits. Since the termination of § 601 benefits will cause a decrease in the pay of NYFD employees (because FEPCA's benefits are lower and also do not extend to wage employees), it is urged that the proviso would prevent any reduction in pay by authorizing continued pay at the § 601 level.

This suggestion misconstrues the purpose of the proviso. As indicated above, the main clause of § 406 directs OPM to reduce § 601 payments in response to FEPCA. That clause, however, does not specify by how much the payments are to be reduced. It is the proviso that limits OPM's discretion in this regard. The proviso precludes any reduction of § 601 benefits that "results in a reduction of the total pay for any employee of the [NYFD]." In effect, this means that OPM may not reduce § 601 benefits by more than one dollar for every dollar introduced under FEPCA; if it did, an employee's total pay would be reduced, in violation of the

proviso. Thus, for each reduction in § 601 payments implemented pursuant to the main clause of § 406, the proviso caps the reduction at the amount of FEPCA dollars that the employee receives, which prevents any net loss of pay.

It must be understood that the proviso's protection applies only with respect to OPM's reduction of § 601 benefits *pursuant to § 406.* This much is established by the phrase, "no such reduction," which unmistakably links the proviso's operation with the preceding clause. *See also* 2A Norman J. Singer, *Sutherland Statutory Construction* §§ 47.08-.09 (5th ed. 1992) (in general, a proviso should be strictly construed to relate to the enactment of which it is part). In this case, the reduction of pay will occur as a result of the winding down of § 601's internal clock, and not pursuant to § 406. Thus, the proviso will not be triggered. Accordingly, § 406 cannot be said to authorize continued extra pay at the § 601 rate.[2]

WALTER DELLINGER
*Acting Assistant Attorney General*
*Office of Legal Counsel*

---

[2] We can find no references in the legislative history of FEPCA (nor were any presented to us) to suggest that § 406 was intended to continue § 601 benefits beyond their natural span.